# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| GARY E. DEL SAVIO, ) | CASE NO:   5:07-cv-3692 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| ) | NANCY A. VECCHIARELLI |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION &** |
| Commissioner of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff, Gary E. Del Savio ("Del Savio"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Del Savio's application for Disability Insurance Benefits ("DIB") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

On November 25, 2003, Del Savio filed an application for DIB, alleging an onset date of August 10, 2003.  Transcript ("Tr."), pp. 59-61.  After his application was denied initially

and on reconsideration, Del Savio requested an administrative hearing. On March 9, 2006, Administrative Law Judge, Robert Tronvig ("ALJ"), held a video hearing during which a vocational expert ("VE") and Del Savio, represented by counsel, testified. Tr. at 310-41. In a decision dated May 23, 2006, the ALJ found that Del Savio could perform his past relevant work as a parking lot cashier and, therefore, was not disabled. Tr. at 28. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Tr. at 6-9.

On December 3, 2007, Del Savio filed a complaint in this Court, seeking judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c). Doc. No. 1. Del Savio claims the ALJ erred by 1) failing to give proper weight to treating source statements, 2) failing to consider the case "as a whole," and (3) lacking substantial evidence that Del Savio could perform jobs in the national economy. Plaintiff's Brief, Doc. No. 14, pp. 10, 13, 14.

## II. Evidence

### A. *Personal and Vocational Evidence*

Born on May 5, 1958, Del Savio was considered a younger individual at all times relevant to this case. Tr. at 59. He has a high school education and has worked as a parking lot cashier, telephone sales representative, data entry clerk, and emissions tester. Tr. at 83, 85-86, 327-31.

### B. *Medical Evidence*

Del Savio is approximately 5'2" and has weighed in excess of 300 pounds throughout the record in this case. Tr. at 121, 123, 145, 147, 149. He suffers from insulin-dependent diabetes, chronic pain, and mental health issues. Tr. at 137. He also suffered

injuries from an automobile accident in 2001, resulting in complaints of ongoing muscle pain in his right trapezius muscle and numbness from his right hand upwards to his head. Tr. at 232-39.

A clinical summary from the Internal Medicine Clinic at Akron City Hospital notes that Del Savio suffers from Type2 diabetes, obstructive sleep apnea syndrome, hypertension, chronic onychomycosis (nail fungus), and allergic rhinitis. Tr. at 231. The summary commented that Del Savio's diabetes was very difficult to control and required large doses of insulin twice a day.

During 2003, Del Savio complained of chest pain and developed Bell's Palsy on the left side of his face. Tr. at 221, 223, 225-30. His follow up care continued for several months, during which he refused steroids. Tr. at 223. He also refused to take a stress test and explained that he feared that he would have a heart attack while taking the test. Tr. at 221.

Candido Anaya, M.D., examined Del Savio at the request of the Bureau of Disability Determination (the Bureau") on March 16, 2004. Tr. at 139. Dr. Anaya found that although Del Savio complained of chronic pain, there was no obvious explanation for the cause of the pain. Dr. Anaya opined that Del Savio could perform any physical activities "except those limited by his significant deconditioning and morbid obesity." Tr. at 139. Dr. Anaya recommended a full psychiatric evaluation because Del Savio stated he was having auditory hallucinations.

From July 2003 through January 2006, Del Savio received care from a local free clinic called Open M and at the Internal Medicine Clinic of Akron City Hospital. Tr. at 144-56, 192-239, 241-47, 285-87. Del Savio's weight remained above 325 pounds; he

3

continued to be an insulin dependent diabetic; and he was noted to be depressed and anxious.

Del Savio also received psychiatric and psychological care at this time. Del Savio's parole officer sent Del Savio to Portage Path Behavior Health ("PPBH") because he had been convicted of indecent exposure. Tr. at 127. During his initial clinical evaluation on November 19, 2002, Del Savio told his counselor that he had an urge to expose himself for a number of years prior to his arrest, but he denied any history of "hands-on" sexual offenses or having ever exposed himself to minors. He also complained of depressive symptoms.

On February 5, 2003, David Moskovitz, M..D., a staff psychiatrist at PPBH, conducted a psychiatric evaluation of Del Savio. Tr. at 128-29. Del Savio reported "that his depression had abated" and that he no longer had difficulty with his sleeping and appetite. He denied suicidal ideation or crying spells. Del Savio also reported improved social skills, closer relationships with his family, and increased self-esteem and self-worth. Tr. at 129. The staff concluded that Del Savio "appears to have benefitted from his treatment" and noted that "he has been cooperative, forthcoming, and his attitude had changed from one of resistance to one of cooperation and compliance." Tr. at 128. They added, however, that his dysphoria appeared to be related to "his continued efforts to obtain employment, [which had] been very difficult for him." Tr. at 129.

On February 24, 2004, at the request of the Bureau, Dr. R. Dallara, Jr., Ph.D., evaluated Del Savio. Tr. at 130-36. Dr. Dallara summarized Del Savio's conditions as depression, exhibitionism, and borderline intellectual functioning, and he assigned Del Savio a Global Assessment of Functioning ("GAF") of 51, indicative of moderate symptoms.

Dr. Dallara administered an intelligence test to Del Savio and attributed the low scores to Del Savio's eyesight and lack of glasses. Dr. Dallara opined that Del Savio was moderately impaired in his ability to relate to others and mildly impaired in his ability to understand, remember, and follow instructions. Dr. Dallara also found that Del Savio was mildly limited in his ability to maintain concentration and attention and in his ability to withstand stress and pressure associated with day-to-day work activity.

On March 31, 2004, Robert L. Gaffey, Ph.D., reviewed Del Savio's record for the Bureau. Tr. at 174-182. Dr. Gaffey opined that Del Savio could remember simple instructions and was limited to work that did not involve production quotas or working with the general public. On April 1, 2004, Paul S. Morton, M.D., completed a physical Residual Functional Capacity assessment on behalf of the State Agency. Tr. at 183-87. Dr. Morton found that Del Savio had no exertional limitations. Tr. at 187.

Del Savio obtained additional psychological treatment from the Department of Psychological Counseling Clinic at the University of Akron ("Akron") beginning in August 2004. Tr. at 173, 249. Between August 5, 2004 and August 29, 2004, Del Savio attended five sessions of individual counseling based on reported symptoms of depression and anxiety. Mindi Thompson ("Thompson"), M.A., a student counselor, noted that Del Savio reported difficulty leaving his house due to a fear that he or his pets would be hurt while he was gone. He also reported having "accidents" when he left his house, although the nature of these accidents is unclear. He further reported "having difficulty trusting others and an inability to sleep due to overwhelming feelings of 'panic' and bad dreams" and "discussed his fear that others are listening to his phone conversations, are staring at him, and are continuously plotting against him." Tr. at 173. Thompson also indicated that Del Savio

often appeared tearful during sessions, particularly when discussing his frustration with his current physical condition, the absence of trusting relationships with others and the health problems of his pets.

Shannon Schmidt ("Schmidt"), a student counselor at Akron who counseled Del Savio, noted that despite his difficulties, Del Savio had demonstrated a number of strengths and reported that he was feeling more hopeful and his relationships with friends were improving.  Tr. at 249.  Del Savio had begun to use relaxation techniques during their sessions and reported using them when he felt "panicky."  He set goals for counseling, one of which was to feel better when he is in crowds.

On May 25, 2005, Jennifer Bohl, M.D., Del Savio's ophthalmologist, wrote that Del Savio has moderate nonproliferative diabetic retinopathy that requires follow-up every four to six months.  Tr. at 270.  She also reported that he is a glaucoma suspect with mildly increased pressures as well as increased cup to disk ration in both eyes and that his complaints of chronic tearing of his left eye which is worse with eating is probably due to aberrant regeneration of his seventh cranial nerve following his Bell's Palsy.

In August 2005, the University of Akron referred Del Savio back to PPBH for treatment of continuing auditory hallucinations.  Tr. at 276.  Sara Stein, M.D., examined him and suspected that Del Savio's nighttime auditory hallucinations could be caused by oxygen desaturation secondary to sleep apnea.  Tr. at 274.  Del Savio indicated that he did not currently use street drugs and rarely drank alcohol.  When asked about addictive behaviors, Del Savio stated that he thought about sex a lot.  Tr. at 279.  Dr. Stein diagnosed Del Savio as suffering from a major recurrent depressive disorder with psychotic features, exhibitionism, and a personality disorder.  Tr. at 274.  She assigned Del Savio

a GAF of 45, indicative of serious symptoms.

On February 1, 2006, Daniel R. Langer, Ed.D., a psychologist at PPBH completed a Medical Source Assessment (Mental) form evaluating Del Savio. Tr. at 289-90. Dr. Langer opined that Del Savio was unable to perform most of the "understanding and memory" functions or the "sustained concentration and persistence" functions on a regular, reliable and sustained schedule. Tr. at 289. Dr. Langer asserted that Del Savio could understand, remember, and carry out very short, simple instructions but would be off-task 11-20% of the work day. Similarly Dr. Langer opined that Del Savio would not be able to regularly, reliably, and on a sustained schedule interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers, or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Dr. Langer's assessment further noted, "Currently struggling with depression and paranoid ideation. Fearful of others watching him. Social isolation – staying in his house. Numerous physical complaints and pain. Problems with short and long term memory." Tr. at 290.

On February 21, 2006, Dr. Langer indicated that Del Savio had been seen at the PPBH outpatient clinic intermittently since November 19, 2002. Tr. at 292. He also noted that when Del Savio returned for treatment on August 25, 2005, he was diagnosed as suffering from a major, recurrent depressive disorder with psychotic features, a personality disorder, and exhibitionism. Dr. Langer concluded that Del Savio's "symptoms are chronic and have been debilitating socially and vocationally" and that he had been unable to maintain employment. Tr. at 292.

7

*C.     Hearing Testimony*

At the hearing on March 9, 2006, Del Savio testified that he eats mostly cold foods so that he does not have to cook. Tr. at 321. His friend sometimes brings him prepared foods and washes his dishes for him. He does laundry once a week, watches television and takes two naps a day. Del Savio further testified that he had last seen Dr. Langer the previous month and that he had been receiving treatment from Dr. Langer for three or four months. Tr. at 322.

The VE testified that Del Savio's past relevant work included telephone sales representative, parking lot cashier, data entry, and emissions tester. Tr. at 330-31. The ALJ then presented the following hypothetical question to the VE:

> Okay, let me ask you to assume then no exertional limitations. Under Exhibit 11F [Dr. Morton's physical RFC assessment], I'm going to ask you to assume taking a hypothetical person the same age and education as Mr. Del Savio, and he's limited to simple tasks, low stress job as defined as no decision-making, limited to simple routine repetitive tasks not performed at a fast paced production environment involving only simple work related decisions and generally relatively few workplace changes. Could this person do [Del Savio's] past relevant work?

Tr. at 331. The VE testified that the hypothetical person could perform the parking lot cashier job, but not other past relevant work. The VE further testified that the person could perform other jobs in the national economy, including courier or messenger, shipping and receiving weigher, and mail clerk. Tr. at 332-33.

The ALJ then presented a second hypothetical question to the VE based on Dr. Langer's psychological evaluation. The ALJ asked the VE to assume a hypothetical person of the same age and education as Del Savio and further assume the following:

> This person, according to Dr. Langer, is precluded from remembering locations and work-like procedures, understand[ing] and remembering

8

>> detailed instructions, precluded from carrying out detailed instructions, precluded from performing activities within a schedule, precluded from maintaining regular attendance and/or punctual with customary tolerances, and I'm stopping with one through seven because it goes on for twenty other potential categories of work related impairments.

Tr. at 333. The ALJ then asked the VE whether such a person could do any of Del Savio's past relevant work, to which the VE testified, "No, Sir." Tr. at 333. The VE further testified that there are no jobs in the national economy that such a person could perform.

Counsel for Del Savio also questioned the VE and proposed a third hypothetical. He asked the VE to assume that the person in the ALJ's first hypothetical had the following two additional limitations: (1) the person was limited to sedentary work (due to bilateral leg pain with numbness) and (2) the person could only occasionally use his hands for fingering, gripping, or grasping due to carpel tunnel syndrome. Tr. at 334. The VE testified that such an individual could not perform Del Savio's past relevant work. Tr. at 335. The VE further testified that such an individual could perform other jobs that exist in the national economy, such as surveillance systems monitor, credit checker, and election clerk.

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ concluded that Del Savio "has not been under a 'disability' as defined in the Social Security Act from August 10, 2003 through the date of this decision." The ALJ based this conclusion on the following findings:

> 1. Del Savio meets the insured status requirements of the SSA through September 30, 2008.
>
> 2. Del Savio has not engaged in substantial gainful activity at any time relevant to this decision (20 C.D.R. 404.1520(b) and 404.1571 et seq).
>
> 3. Del Savio has the following severe impairments: depression NOS, exhibitionism, borderline intellectual functioning, recurrent major depressive disorder with psychotic features, and personality disorder NOS.

> 4. Del Savio does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments un 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. Del Savio has the RFC to perform an unlimited range of work physically and mentally is limited to simple routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decision, and in general, relatively few work place changes.
>
> 6. Del Savio is capable of performing past relevant work as a parking lot cashier.

Thus, at step four of the sequential process, the ALJ concluded that Del Savio was not disabled.

### V. Standard of Review

The Court's review of the Commissioner's decision is limited to determining whether there is "substantial evidence" to support the Commissioner's decision and whether the Commissioner employed proper legal standards in reaching his conclusion. Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). If substantial evidence for the Commissioner's decision exists, the Court's "inquiry must terminate" and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). If the Commissioner's decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the disputed issues of fact differently. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

### VI. Analysis

Del Savio argues that 1) the ALJ failed to give proper weight to the opinions of Del Savio's treating source; 2) the ALJ did not consider the case "as a whole"; and (3) the ALJ did not have substantial evidence to find that there were jobs that the plaintiff could perform. Plaintiff's Brief at 10, 13, 14. The Court reviews each of these arguments below.

*A.      Whether the ALJ Gave Proper Weight to Opinions of a Treating Source*

Del Savio argues that the Commissioner failed to give proper weight to Dr. Langer's opinion that Del Salvio was not capable of performing unskilled work, that his symptoms were chronic and socially and vocationally debilitating, and that he had not been able to maintain employment. According to Del Savio, Dr. Langer was a treating source and, therefore, his opinions were entitled to greater weight than those of non-treating physicians.

The SSA classifies acceptable medical sources into three types: nonexamining sources, nontreating sources, and treating sources. *See* § 404.1502. Section 404.1502 defines a "treating source" as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). *We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.* In such a case, we will consider the acceptable medical source to be a nontreating source.

Tr. at 25 (emphasis added).

12

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988).

In assigning minimal weight to Dr. Langer's opinion, the ALJ noted, *inter alia*, that the record was devoid of evidence that Dr. Langer was Del Savio's treating physician, that the opinions of other treating physicians contradicted Dr. Langer's opinion, and that Dr. Langer's opinion was inconsistent with Del Savio's daily activities. Tr. at 25. These explanations are valid reasons for giving little weight to the opinion of an alleged treating physician.

Del Savio challenges the ALJ's assertion that the opinions of other treating physicians contradicted Dr. Langer, claiming that those opinions were either from an earlier period pre-dating Del Savio's psychological decline or were not actually inconsistent with Dr. Langer's opinion. Del Savio also argues that Dr. Langer's opinion is consistent with "most of" the exhibits related to Del Savio's activities of daily living. Plaintiff's Brief at 11. Even if these challenges were sufficient to attenuate the force of the ALJ's decision, Del Savio fails to demonstrate or even assert that Dr. Langer was a treating source. As the

13

ALJ noted, the record contains no documentary evidence, such as progress notes, letters, or other reports, indicating that Del Savio received treatment from Dr. Langer. In response to the ALJ's assertion that Del Savio fails to demonstrate that Dr. Langer was a treating physician, Del Savio responds as follows:

> Because PPBH is a public agency, counsel also rejects the reasoning that since Langer doesn't specifically state that he treated Del Savio, he can't be considered a treating source. In fact, Del Savio has been seen at PPBH for a four year period, albeit not constantly. Evaluations that encompass a longitudinal view are much more valid than the one time snapshots that the State Agency reviewers provided.

Plaintiff's Brief at 13-14. Merely because Dr. Langer is affiliated with an institution at which Del Savio received treatment does not make Dr. Langer a treating source.

Having failed to refute the ALJ's contention that the record provides no evidence that Dr. Langer was a treating source, the ALJ is entitled to give minimal weight to Dr. Langer's opinion. Del Savio's contention that the ALJ failed to give proper weight to Dr. Langer's opinion, therefore, is not well-taken.

*B.     Whether the ALJ Considered the Record "As a Whole"*

Del Savio contends that the ALJ failed to consider the record as a whole because he focused on evidence from 2002-03, discounted later evidence, and was unfairly selective about the evidence he found credible from Dr. Gaffey's report. Del Savio cites no specifics regarding the ALJ's alleged preference for earlier evidence, does not reveal whether the ALJ gave reasons for this alleged preference, and, if the ALJ gave such reasons, does not demonstrate that those reasons were not supported by substantial evidence. Del Savio's contention with regard to an alleged preference for earlier evidence, therefore, is an unsupported generalization rather that an argument supported by

14

evidence.[1]

Del Savio's contention that the ALJ was unfairly selective about using Dr. Gaffney's report is somewhat better supported. Del Savio argues as follows:

> The ALJ said he was rejecting [Dr. Gaffney's] finding that Del Savio should not be working with the general public as he was performing daily activities that do expose him to contact with the public. (Tr. 24). Attending all of his counseling sessions and doctors' appointments[ ] does not constitute the equivalent of being with the general public. Neither does taking one's pets out and caring for them. Again, the ALJ focused on evidence from the early part of the decade and not on the evidence from 2005-2006. The ALJ further said that the Plaintiff cannot be found fully credible because [Dr. Gaffney] determined in March 2004 that he could perform unskilled work (Tr. 27). This from the same assessment that the ALJ rejected because [Dr. Gaffney] said Del Savio had demonstrated he could be around the general public. While the ALJ can accept and reject evidence as he sees fit, he has to have a valid reason for doing so, he must articulate that rationale, and picking and choosing from the same report [ ] does not seem to comport with that requirement.

*Id.* at 14.

Del Savio overlooks that the ALJ also noted that Del Savio did his own shopping. Keeping appointments for medical and psychological treatment, taking one's pets out for walks, and shopping are at least substantial evidence that Del Savio is able to handle contact with the public. As Del Savio himself says, the ALJ can accept and reject evidence as he sees fit if he gives good reasons for doing so. The ALJ gave a reason supported by substantial evidence for rejecting Dr. Gaffney's opinion that Del Savio could have no contact with the general public. Consequently, Del Savio's contention that the ALJ was unfairly selective about using Dr. Gaffney's report is not well taken.

For the reasons given above, the court does not accept Del Savio's contention that

---

[1] Del Savio's contention that the ALJ focused on evidence from 2002-03 also ignores the ALJ's citation of psychological opinions through August 2005 that Del Savio's mental condition was not nearly as poor as he alleged.

the ALJ failed to consider the record as a whole.

*C.  Whether the ALJ Had Substantial Evidence That Del Savio Could Perform Available Jobs*

Del Savio also asserts that the ALJ lacked substantial evidence that there were jobs that he was capable of performing.  The basis for Del Savio's assertion is that the VE was able to identify only 370 jobs in the region that Del Savio could perform and this is not a significant number of jobs.

As described earlier in discussing the standard for determining disability, if a claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(f) and 416.920(f).  Consequently, whether there are a "significant" number of jobs in the region that Del Savio can perform is not relevant.

Moreover, even if the court were to consider whether there are a sufficient number of jobs that Del Savio could perform, his argument would be flawed in two respects.  First, contrary to Del Savio's assertion, the VE did not list only 370 jobs in the region that Del Savio could perform.  The VE testified that Del Savio could perform the jobs of parking lot cashier, shipping and receiving weigher, mail clerk, surveillance systems monitor, call out operator, and election clerk.  The VE did not testify as to the number of parking lot cashier jobs available in Cleveland or the state of Ohio.  He testified, however, that there were 150 jobs in Cleveland for a shipping and receiving weigher, 615 jobs in Cleveland and 3,500 in Ohio for a mail clerk, 100 jobs in Cleveland and 500 in Ohio for a surveillance systems monitor, 170 jobs in Cleveland and 500 in Ohio for a call out operator, and 100 jobs in Cleveland and 700 in Ohio for an election clerk.  Thus, the VE gave a total of 545 jobs in Cleveland and 5,200 jobs in Ohio, plus an unknown number of jobs as a parking lot cashier,

16

that Del Savio can perform.

Del Savio's argument is also flawed in its assertion that 370 jobs is not a significant number of jobs. He provides no evidence to support his contention that such a number of jobs is too small compared to the regional population to be considered a "significant" number of jobs. Thus, even if his contention that the VE listed only 370 jobs that Del Savio could perform were correct, and it is not, Del Savio's argument would not be well-taken because he fails to provide any support for the argument's key premise.

For these reasons, Del Savio's assertion that the ALJ lacked substantial evidence that there were jobs that he was capable of performing is not well-taken.

## VII.  CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**


DATE:  September 11, 2008            /s/ *Nancy A. Vecchiarelli*
                                     United States Magistrate Judge